IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | |
| ) | 1:09cr414 (JCC) |
| Marvin Wayne Williams, Jr., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion to Dismiss or for Sanctions ("Mot.") [Dkt. 87] and Defendants' Supplemental Motion to Dismiss or for Sanctions [Dkt. 89]. Defendants seek these remedies in response to several alleged incidents of the Government "discovering" and turning over exculpatory evidence after first denying its existence. For the following reasons, the Court will deny Defendants' Motion.

**I. Analysis**

Federal Rule of Criminal Procedure 16(d)(2) authorizes the Court to impose sanctions for failure to comply with a discovery order. Specifically, where a party fails to comply, the Court may (1) order that party to permit discovery or inspection of the requisite item with a time, place, and manner

for doing so; (2) grant a continuance; (3) prohibit the party from introducing the undisclosed evidence; or (4) enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2). "The decision to impose sanctions under Rule 16(d)(2) is left to the sound discretion of the trial court." *United States v. Glover*, 846 F.2d 339, 342 (6th Cir. 1988).

In considering whether to apply sanctions for discovery violations, the Court "must weigh the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government." *United States v. Hammoud*, 381 F.3d 316, 336 (4th Cir. 2004) (quotation marks omitted). Dismissal of an indictment is an "extreme" measure because "[w]hen a Court sanctions the government in a criminal case for its failure to obey court orders, it must use the least severe sanction which will adequately punish the government and secure future compliance." *United States v. Hastings*, 126 F.3d 310, 317 (4th Cir. 1997).

Defendants here argue that sanctions are warranted by the Government's continued production of materials whose existence it previously denied. (Mot. ¶ 1.) According to

2

Defendants, in early August,[1] the Government represented that all materials responsive to Defendants' discovery requests were in their possession. (Mot. ¶ 2.) Yet since then, the Government's attorneys received and turned over to Defendants a series of additional materials from the Manassas City Police Department ("City"). These include 850 pages of discovery (turned over September 10, 2010), an audio recording of a City interview with Bradley Tibbs where he identifies three persons other than the codefendants as Kyle Turner's killers (turned over October 15, 2010), an audio recording of another interview with Annette Sprow, a key Government witness (turned over November 8, 2010). (Mot. ¶¶ 2, 3, 4.) Defendants also voice skepticism over the Government's failure to turn over "any written reports or notes memorializing any aspect of the City's investigation into the murder of Kyle Turner." (Mot. ¶ 5.)

There is no question that, for the purposes of the Government's discovery obligations, "the Government" extends beyond the Assistant United States Attorneys prosecuting this case, to "all members of the prosecution's team." *United States v. Munson*, No. 03-1153, 2004 WL 1672880, at *2 (N.D. Ill. Aug. 5, 2004); *see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn of any

---

[1] Defendants' Motion appears to contain a typographical error in this paragraph making it difficult to identify the precise date on which they claim the Government made its representation and what exactly that representation was.

3

favorable evidence known to the others acting on the government's behalf in the case, including the police."). Whether a prosecutor succeeds or fails in this obligation depends on whether his failure to disclose is in good or bad faith. *Kyles*, 514 U.S. at 437 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

Here, although the City's adherence to its discovery obligations is questionable, there is no evidence of prosecutorial bad faith or even an allegation that Defendants were *prejudiced* by the "late" disclosures. Indeed, it should be noted from the outset that the Government has not actually violated the Court's Discovery Order ("Order") in this case. [*See* Dkt. 35.] That Order says, in relevant part, that "if, prior to or during trial,[2] a party discovers additional evidence or material which is subject to discovery or inspection under the ORDER, that party shall promptly notify the other party or his attorney or the Court of the existence of the additional evidence or material." (Order at 3.) It states that "the Government shall comply with its obligations to produce any known exculpatory material as required by *Brady*." (Order at 4.) And it states that "by 5 p.m. one calendar week prior to trial,

---

[2] The Court emphasizes this language in response to Defendants' request that the Court preclude the Government from calling witnesses "for whom notes, reports, etc. of interviews and/or interrogations have not been provided to the defense." (Mot. at 6.) The Court declines to impose such a blanket rule and will evaluate such a situation when and if it arises.

4

the Government shall produce to the defendant the *Jenks Act* and *Giglio* materials for the witnesses who will testify in the Government's case in chief." *Id.*

Here, upon becoming aware of additional materials requiring disclosure, the prosecution has disclosed those materials to Defendants. There is therefore no evidence of bad faith or violation of the Order to warrant sanctions.

As for *Brady* materials, to the extent the withheld materials fall into that category, "there is not a hard and fast deadline" for their disclosure, rather, "as long as *Brady* material is disclosed . . . in time for its effective use at trial," "[n]o due process violation occurs." *United States v. Lowery*, 284 F. App'x 64, 69 (4th Cir. 2008). Indeed, "the time necessary for effective use at trial *may* even include disclosure at trial itself." *Id.* (emphasis added). And here, the materials turned over thus far, while coming after the Government's assurances that they did not exist, were not turned over so late as to preclude their effective use at trial, meaning that Defendants have not been prejudiced.[3]

Finally, with respect to the Government's *Jencks* and *Giglio* obligations, the Government's current deadline for

---

[3] In terms of prejudice, the Court must note here that it is underwhelmed by Defendants' efforts at interviewing the relevant Government witnesses. Where a defendant could have obtained information sought through reasonable diligence, the prosecution's failure to disclose does not violate due process. *See Hoke v. Netherland,* 92 F.3d 1350, 1356 (4th Cir. 1996)

turnover of those materials is November 24, 2010, *several days from the date of this opinion*.  The Government is therefore not in violation of those obligations.

## IV.  Conclusion

For these reasons, the Court will deny Defendants' Motion.

|  |  |
|---|---|
|  | /s/ |
| November 19, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |